UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:08-CR-67-HAB |
| | ) | |
| DARNAY WILSON | ) | |

## OPINION AND ORDER

Darnay Wilson ("the Defendant") filed a Motion for Compassionate Release or Home Confinement under the First Step Act (ECF No. 96), and a Supplemental Letter in Support of his Motion (ECF No. 107). Pursuant to this Court's General Order 2020-11, the Court referred the Motion to the Northern District of Indiana Federal Community Defenders, Inc. ("FCD") for it to consider representing the Defendant with respect to his motion. (ECF No. 99). Initially, the FCD appeared on the Defendant's behalf but later, the FCD moved to withdraw. (ECF No. 105). Thereafter, the Government filed its response to the motion (ECF No. 112) and the Defendant replied (ECF No. 113). For the following reasons, the Defendant's Motion will be DENIED. The FCD's Motion to Withdraw will be GRANTED.

## PROCEDURAL BACKGROUND

On August 27, 2008, the Defendant was charged in a two count Indictment with: (1) bank robbery by force and violence and aiding and abetting in violation of 18 U.S.C. §§ 2113(a) and (d) and § 2 (Count 1); and (2) use of a firearm during and in relation to a crime of violence and aiding and abetting in violation of 18 U.S.C. §§ 924(c) and § 2 (Count 2). (Indictment, ECF No. 12). Surveillance footage along with witness statements revealed that three men wearing masks and displaying guns entered the bank. They ordered the bank employees to lie on the ground and demanded to know where the money was located. (Presentence Investigation Report, ECF No. 44

at ¶ 18). The Defendant and his co-conspirators obtained more than $14,000 from the bank. However, during the getaway, a dye pack included with the money exploded and stained the money, bag, and robbers with red dye. Later, the Defendant confessed to his participation in the bank robbery. (*Id.* at ¶ 27).

On March 18, 2009, the Defendant pled guilty to the offenses. (ECF No. 30). He was sentenced to a total term of imprisonment of 308 months with five years of supervised release to follow. The Defendant is presently incarcerated at FCI Pekin in Pekin, Illinois with an anticipated release date of September 30, 2030.

## **DISCUSSION**

The Defendant's Motions request a sentencing modification. Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which permits the court to grant an inmate compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). Under this provision, a court may not modify a term of imprisonment except that –

    (1) in any case --

      (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—

      (i) extraordinary and compelling reasons warrant such a reduction …

      … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

2

The Government concedes that the Defendant has exhausted his administrative remedies at his facility and that his motion is properly before the Court. Thus, the Court turns to the substance of the Defendant's request, his contention that he has demonstrated "extraordinary and compelling reasons" for his release.

The Defendant asserts that his chronic asthma, his race, and the conditions at FCI Pekin warrant compassionate release. (ECF No. 60 at 9). Additionally, he sets forth a number of programming opportunities he has completed while incarcerated and indicates that if the Court modifies his sentence, he has employment waiting with Fusion Hotel, Inc., and his girlfriend in Fort Wayne, Indiana is willing to provide housing for him.

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission to promulgate a policy statement that "describe[s] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The policy statement, contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes, in line with the statutory directive in § 3582(c)(1)(A), requires a court to make several findings.

First, the court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). To this end, a court is to consider the medical condition of the defendant, his age, his family circumstances, and whether there exists in the defendant's case an extraordinary or compelling reason "other than or in combination with" the other reasons described in the Application Notes. Second, the Court must determine whether the Defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. §

1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Additionally, when the Defendant moves for a reduction based on COVID-19, Courts have also considered: (1) the specificity of the defendant's COVID-19 concerns, (2) whether the defendant has a medical condition that makes him especially susceptible to the dangers of COVID-19, and (3) the extent that the defendant's release would mitigate or aggravate the COVID-19 pandemic. *See United States v. Council*, No. 1:14-CR-14-5-TLS-SLC, 2020 WL 3097461, at *5–7 (N.D. Ind. June 11, 2020); *United States v. Barrett*, No. 2:17-CR-1, 2020 WL 3264112, at *3 (N.D. Ind. June 17, 2020); *see also United States v. Davis*, No. 2:19-CR-74-3, 2020 WL 1951652, at *1–2 (N.D. Ind. Apr. 23, 2020) (applying similar factors to consider whether there was a "compelling reason" for pretrial release due to the COVID-19 pandemic). In the context of the COVID-19 pandemic, "§ 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where he is housed and his personal health conditions." *See Council*, 2020 WL 3097461, at *5; *United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D.Ill. May 12, 2020).

Ultimately, however, it is Defendant's burden to establish that a "compassionate release" is warranted under the statute. *United States v. Wesley*, 2020 WL 3868901, *1 (D. Kan. July 9, 2020); *see also United States v. Bright*, 2020 WL 473323, at *1 ("extraordinary and compelling" imposes a heavy burden on a defendant seeking relief under Section 3582(c)(1)(A)).

In this case, the Defendant asserts that he suffers from chronic asthma. The Center for Disease Control ("CDC") does recognize moderate to severe asthma as a comorbidity that *might* increase the risk of serious injury or death from COVID-19. *See* People Who Are At Increased Risk for Severe Illness, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

4

precautions/people-at-higher-risk.html (last accessed November 13, 2020). The Defendant asserts that he has "complained about and sought medical attention for [chronic asthma] since the beginning of the COVID-19 lockdown." Additionally, he indicates that he "sought out breathing treatments and a breathing machine." (ECF No. 96 at 8). Yet, he has not provided the Court with any medical records from the BOP to verify these assertions. Nor can the Court, without sufficient medical documentation, assess whether the Defendant's asthma, even if moderate or severe, is well-controlled by the BOP within the facility.

What the Court can conclude based upon the presentence investigation report prepared in his case is that the Defendant reported having been diagnosed with asthma at age 10 and that he was prescribed albuterol for the condition. He otherwise reported himself to be "in good health" (ECF No. 44 at ¶ 102). However, even if the Court assumes the asthma diagnosis from the presentence report, Defendant has done nothing more than allege a generalized claim of asthma. This does not carry his burden to show circumstances meeting the standard for compassionate release. *See United States v. Washington*, 2020 WL 1969301, at *4 (W.D.N.Y. Apr. 24, 2020) (holding that a generalized claim of asthma is not a sufficiently extraordinary and compelling reason for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)).

Next, Defendant maintains that his race (he is African American) may elevate the risk of contracting COVID-19 and suffering severe illness. (ECF No. 96 at 8). While African Americans have suffered a disproportionately high rate of hospitalizations and deaths from COVID-19 compared to the overall population, race itself generally is not considered a risk factor. *See United States v. Beasley*, No. 13-10112-3-JTM, 2020 WL 5077383, at *1 (D. Kan. Aug. 27, 2020) (statistics show COVID-19 disproportionately affects African-Americans, but explanation may be that African-Americans disproportionately have underlying medical conditions which render virus

dangerous); *United States v. Myers,* No. 18-20633, 2020 WL 4934343, at *3 (E.D. Mich. Aug. 24, 2020) (inmate's race itself does not constitute risk factor for COVID-19 in same way as underlying medical condition does); *United States v. Green*, 2020 WL 3642860, at *4 (W.D. Pa. July 6, 2020) (denying motion for compassionate release for 39-year-old defendant, explaining that while data suggests that African-Americans have been disproportionately affected by COVID-19, it is unclear whether race is an independent risk factor or whether adverse outcomes are caused by other factors). Thus, the Defendant's race does not tilt the scales in favor of compassionate release. !

Finally, Defendant shares his concerns about the events transpiring at his facility in Pekin, Illinois. As of the date of this Opinion and Order, the entire country has experienced a second surge in COVID-19 cases. FCI Pekin, a facility housing over 1,111 inmates, is currently reporting 63 positive inmate cases, 6 positive staff, 0 inmate or staff deaths and a combined 150 inmate and staff recovered. This translates to a 5.67% positivity rate among inmates.[1] Currently, in certain counties in Illinois, the positivity rate exceeds 15% and, as of today, in Indiana (where the Defendant would reside if released), the seven-day positivity rate is 10.5%.  While certainly not ideal, the current conditions at FCI Pekin appear to be more controlled than the spread of COVID in the general population. Thus, the Court does not find the conditions at FCI Pekin so dire as to warrant compassionate release. *See United States v. Raia,* 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.").

Finally, even if the Court determined that Defendant met his burden to show conditions warranting compassionate release, the Court would ultimately deny the Defendant's request for a sentencing modification in light of the §3553(a) factors.  Although the Defendant has served over

---

[1] https://www.bop.gov/coronavirus/

half of his sentence of 308 months, this sentence was imposed to reflect the seriousness of the offense, promote respect for the law as well as to afford adequate deterrence and to protect the public from further crimes of the defendant. The Defendant committed the instant offense when he was just 23 years old and has a criminal history dating back to age 15.  For the instant offense, he and his co-conspirators brandished firearms inside the bank and at least one of the co-conspirators threatened the lives of employees inside the bank. That says nothing of the Defendant's prior criminal history which includes three felony convictions, two of which involved battery (using a firearm) and domestic battery.  The remaining conviction was for a narcotics charge. Thus, by age 23, the Defendant had amassed no less than 4 serious criminal felony convictions and was deemed a career offender. Given these circumstances, the Court cannot conclude that the Defendant does not pose a significant threat to the community as no prior intervention by authorities has curbed his penchant for violating the law. The Court finds that the significant sentence reduction that Defendant seeks would greatly undermine the above statutory purposes of sentencing.

In sum, because this Court does not find extraordinary and compelling circumstances exist for the Defendant's release and a reduction of sentence is inconsistent with the § 3553(a) factors, Defendant does not meet the criteria for compassionate release and his motions are DENIED.

## **CONCLUSION**

Based on the foregoing, the Defendant's Motion (ECF No. 96) is DENIED.  The FCD's Motion to Withdraw (ECF No. 105) is GRANTED.

So ORDERED on November 16, 2020.

    s/ *Holly A. Brady*
    JUDGE HOLLY A. BRADY
    UNITED STATES DISTRICT COURT